Our first case today, my voice sounds worse than it is, just so you know, I'll leave a motion, not an admission, sorry. Nobody told me. Okay, Judge Toronto, you have a motion? All rise. So I have a motion for admission to the Bar. I move the admission of Gary M. Fox, who is a member of the Bar and is in good standing with the highest court of New York. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. I have this knowledge because Gary was one of my law clerks last year and left Chambers over the summer. We miss him very much. He was a splendid law clerk. He was meticulous and thorough, very precise and clear-headed in his thinking and writing. He understood that when reading most of what we read, which is sentence after sentence after sentence submitted by lawyers with, by definition, an angle, one has to not take every word at face value and figure out what exactly is going on behind everything. And he was a wonderful companion in Chambers, both to me and to his fellow law clerks. He has launched in a very promising, bright career, and we look forward to seeing him in this court and wherever else he applies his trade. I am more in favor of voting on the motion. I'm in favor, and if Judge Toronto says you're meticulous, holy cow, you must be deteriorated. I'm going to assume the presiding dude is just because I have a voice and my colleague doesn't, but she's really the presiding judge here, okay? So whatever motion she makes to you, obey them. Do you want to, Facey? You solemnly swear to report yourself as an attorney and counselor to this court, uprightly and according to law, and that you will support the Constitution of the United States of America. I do. Congratulations. Thank you. We have five cases before us today, four for oral argument. One case has been submitted on the briefs. The first case today is Personal Audio, LLC v. CBS Corporation, 18-2256. Mr. Peacock, you have reserved five minutes of your time for rebuttal. Is that correct? Yes, Your Honor. Okay. You may proceed. It may please the court. The first issue that needs to be decided is whether we can even be here looking at the jury verdict because of the IPR decision. And I believe that it is wholly within Supreme Court precedent that you must have a chance to challenge any proceeding that is going to be used to collaterally stop a jury verdict. Under Blondertongue, which reversed many, many years of not allowing issue preclusion between different parties, the Supreme Court said, although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard. But why didn't you have a full and fair opportunity to litigate when you appealed the prior IPR? You had an IPR proceeding. You had an appeal to this court. Most of your constitutional challenges to us, due process and takings, relate to the impropriety that you think existed in the IPR. They don't relate to the district court litigation. So why didn't you already have a full and fair opportunity to litigate? And for whatever reason, you just chose not to avail yourself of it. Well, Your Honor, the law has changed in Arthrex, which was recently decided. But how has due process and takings law changed? So, Your Honor, due process law would require that the proceedings below be consistent with the Constitution of the United States. And this court has recently ruled that, in fact, under the appointments clause, the prior RPR. You have waived that issue. I disagree, Your Honor. That's fine, but we don't disagree. And custom media says you waived it. It's a presidential decision of this court. So this panel is without any authority to give you any relief on that point. So why don't you move on to whatever points we could possibly give you relief on? Certainly, Your Honor. So in B&B Hardware, also under the Supreme Court, cited by the appellees. Can I just try to understand? I think not quite all, but most of the arguments you make are arguments that challenge the board's final written decision and the ministerial act of cancellation that followed that. You do have one argument that is not a challenge to the board decision, but is a challenge to the effect of the board decision on the district court case. And on that, I guess I would tend to agree that, of course, you can make that argument. But equally, of course, as I think you agreed in the district court, our current binding precedent, Fresenius and all that Fresenius is built on, precludes us from agreeing with you. So we have jurisdiction to hear that, but we have to rule against you on the merits. But it's not that we can't hear that particular point. No, and that's really the point I'm trying to make, which is that you do have the ability to challenge the effect of this later IPR decision on the jury verdict that was rendered long before the supposed cancellation of the claims. And then that right is under Blondertongue and B&B Hardware. And what has changed is that the Arthrex case has held that the appointments clause was violated in the IPR that canceled the patent suit. And therefore, the argument that I believe still remains is, are you going to give collateral estoppel effect to a proceeding that this court has held to be unconstitutional? I can't challenge, I'm not trying to go back and file any new claims. I'm not trying to challenge the decision of the board in this proceeding. I'm saying that it shouldn't be given preclusive effect because, as it says in B&B Hardware by Judge Alito, the correct inquiry is whether the procedures used in the first proceeding, which in this case was actually the second proceeding, were fundamentally poor, cursory, or unfair. And I would submit that an unconstitutional proceeding is per se unfair. So just to be clear, your entire argument to us today is Arthrex and not any of the multitude of constitutional issues you raised in your brief? No. What about your claim about due process, takings, ex post facto, Seventh Amendment? I mean, you hardly missed a section of the Constitution. So what about all those? No, certainly, Your Honor. I continue to believe that the failure to construe the claims under 37 CFR Section 42-104B3 rendered the claims constitutionally infirm. The failure to follow the procedures under Matthew and Eldridge that are required for construing series of episodes, for example, I think were fundamentally one of the issues. But you could certainly argue that all of that was raised and could have been raised in the earlier proceeding, and it wasn't found to be unfair then, so I doubt you're going to find any of it unfair now. The thing that has changed is this court has held that the appointments clause was violated in the earlier IPR, and that wasn't the case when we were briefing any of these issues before. And that's the... So to summarize what you just said, that you're no longer really expecting any relief on any of the arguments you made in your brief, and you're hinging your argument today on the appointments clause, which, by the way, you referred to as the apportionment clause in your filing to this court. I apologize. No, Your Honor, that's not correct. I also believe that under the Seventh Amendment and this court's precedent, earlier precedent, specifically Druro last v. Customs Seal, you cannot use a later proceeding to overturn a jury verdict under the Seventh Amendment. Right, but that really is an argument, as I read it in your brief, that challenges the agency's decision. I didn't see a separate argument that said taking the final written decision as a given and the ministerial act of cancellation that follows from it as a given, that the Seventh Amendment precludes giving effect to that in the district court proceeding. You make that argument on sort of collateral estoppel grounds, and you think Fresenius is wrong and whatnot, but a separate point about the Seventh Amendment I don't think I was seeing. And I apologize if it was unclear in the briefing, Your Honor. The argument was raised a few different times that nothing that occurs after the jury verdict can possibly be a reason for overturning it because under this court's precedent and Druro last v. Customs Seal, you have to raise whatever issues you're going to raise to challenge the verdict in the pre-verdict judgment as a matter of law. There is no way that you could argue that as a matter of law you'd win under an IPR before the verdict. There's no way you can make that argument because it hasn't occurred yet. Once the jury verdict is rendered, then you're stopped under the Seventh Amendment, and I believe under this court's decision in Druro last, from now raising later after the fact proceedings to try to challenge what the jury verdict holds. And that is an argument that, again, is protecting the jury verdict, not challenging the administrative decision. Did you make this argument to the district court? I believe, Your Honor, and I want to be perfectly frank. I'm trying to remember all the arguments from a few years ago that we raised to the district court. I believe that we argued the Seventh Amendment. I believe we argued that the Seventh Amendment was violated by reexamining the jury verdict by the IPR proceeding after the fact. I don't recall off the top of my head whether we cited this specific case, Druro last, for that proposition. My recollection, tell me if I'm wrong, is that you did make a Seventh Amendment point and a collateral estoppel point, but immediately you didn't develop the arguments. You said there's really no point in developing the arguments because we agree that existing governing precedent is against us on that, so we will accept judgment as a matter of law. So we argued that—I mean, the judge asked us to brief him by letter on what we believe the effect of the decision on the IPR was. We, at the time, were not aware of any precedent on point, and I believe that one of the cases—I apologize. One of the cases had just come out. Right, but I guess I'm looking at page 423 of the appendix, which is, you know, your statement of your position in this, and it says we continue to believe that overturning the verdict violates the Seventh Amendment. That constitutional question left open by oil states. We also believe collateral estoppel is not appropriate. However, personal audio believes that current authority supports rendering a judgment in favor of the defendant's CBS so that the issues can be appealed. And I believe that that was our view of the authority at the time, was that we did not believe that there was an argument that the Federal Circuit had accepted. And the only intervening thing that's happened is our threats on the appointments clause, is that? That is, I would say, not the only intervening thing that has happened. We also—I mean, so it's not the only intervening thing. I mean, Mr. Lieberman filed a letter brief. I believe some of the due process challenges and other things have been resolved by this Court as well. Nothing intervening that might help you. That might help me, yes. Counselor, you're into your rebuttal time. Do you want to save your time? I do. Thank you, Your Honor. Judge Morin, may it please the Court. I have just three very brief points I'd like to make that I think address all of the various points made by Mr. Pitkoff. Personal audio advances on this appeal more than half a dozen different arguments, constitutional arguments. I actually got to use my pocket constitution quite a lot on this appeal. But I think every one of the arguments is subject to three fatal flaws. The first one is that no final judgment was ever entered in personal audio's favor in the district court action. There was a jury verdict. There were judgments, motions for judgment as a matter of law. Those were pending when the parties jointly moved, that is personal audio joined in this motion to stay the district court action pending the results of personal audio's appeal of the final written decision in the IPR. So whatever consequences flow from that are directly the result of a strategic decision that personal audio made. Second, personal audio has waived each and every one of its currently asserted defenses by one of three methods, either by not presenting them to the district court when it agreed to enter judgment for CBS, by not presenting them in its earlier appeal to this court from the IPR ruling, or by presenting the arguments in the earlier appeal and losing them. So the only constitutional arguments that were presented to this court on the appeal from the IPR were the Seventh Amendment arguments, including the Reexamination Clause arguments. They lost on those. They didn't present any others. Those were all waived. Why, as to the two points that it did mention at page 423 of the appendix, when agreeing to entry of judgment, why is that a waiver? I mean, isn't it, in fact, quite a method to be encouraged when the party recognizes that it cannot currently win in the district court. There's no point in papering the issue in the district court because the district court is bound by governing precedent, and we just need to go north where we might be able to get the bad precedent overturned. Right. So to answer that question in two ways, the first is this court has a body of precedent regarding what constitutes a waiver, and not fully articulating an argument, referring to it only in passing, this court is regularly described as a waiver. Number two, and this is, I think, a policy argument, neither this court nor any other court of appeals, including the Supreme Court, I think, would welcome a situation in which a party says to the court immediately below, I don't think I can win on this point, so I'm not going to set forth my arguments. Let's just go up on appeal. For example, Mr. But he didn't say, I don't think I can win. He said, basically, federal circuit precedent blocks what I want to do, so let me take this up to them and argue to them why their precedent is wrong. So the district court was without power to give him the relief he sought. The futility exception has always been an exception to waiver, and we've consistently held things not waived when it would have been futile to bring them below, and that's when it's not even mentioned. Here it's both mentioned and futile, and, in fact, the futility is on its face, articulated. Why in the world would that amount to waiver? Right. I would submit, Your Honor, that given the arguments that have been made to this court, many of which are that the Fresenius decision or the XY decision simply do not apply in this circumstance, those arguments could have been made as well to the district court as to this court. That is, Mr. Pitcock and his client were not arguing below or not arguing here on some of the points at least. Your point is well taken that to the extent that his arguments are that this panel has the ability to give him relief on the collateral estoppel question, he waived that below. Those points are well taken, but not on the larger issue of Fresenius, which is really kind of a difficult precedent and not one that I think our colleagues are unanimous on. So why do you think his case is moot and that we don't even have a jurisdictional right to review the arguments he is making about Fresenius? So first let me address I think the central point of Your Honor's question, which is Fresenius in this case. And I understand there's some disagreement among members of this court about the appropriateness of Fresenius and the boundaries of that decision, at least what they should be. And at least two members of this panel I think joined in a dissent from a petition for rehearing en banc in a case recently addressing some of those issues. There are at least three and maybe more reasons why this case would be a spectacularly bad reason to review. But that's not my question. My question wasn't you should please address the merits of whether we should take Fresenius in bank. My question to you was you have argued this court has no jurisdiction to even hear this appeal. That's correct, Your Honor. But how can that be when he is making an argument that a portion of our precedent should be overturned, an argument that he made below? Right. How can it be we don't have jurisdiction? Right. I understand Your Honor's question. And I think the answer is a very straightforward one, which is we have a situation here in which the patent has been canceled. And it's a situation in which the patent has been canceled. And, by the way, there was no final judgment from the district court, much less an affirmance of a finding of no invalidity by the Federal Circuit. So we have the patent canceled. I'm sorry. There is a final judgment now. It just had not been at the time. I'm sorry. Your Honor is exactly correct. I will try to be more precise. There was not at the time that the Federal Circuit affirmed the ruling of the PTAB and the IPR that the patent was not invalid. And the reason was because personal identity had joined in the stay motion to stay the district court action. Therefore, you have a canceled patent. The clear holding of Fresenius is when the patent has been canceled, there is no subject matter jurisdiction over pending or future lawsuits involving that patent because the patent doesn't exist. Now, personally, I don't care whether or not. I mean, I get how you can read the language, the sentence that says it is moot in that way, but that would be a surprising and odd reading. The fact is that was the bottom line conclusion after the panel and Fresenius went through an extended analysis to come to the conclusion that Supreme Court law and whatnot required the end of the assertion of the patent cause of action once the patent had been declared invalid. So it was a kind of conclusion. And it didn't say we dismiss the appeal for lack of jurisdiction. It affirmed the district court's dismissal. So it seems more of a seizing on a word that sometimes, like the word jurisdiction, has somewhat loose use. Right. I have perhaps in arguing this point been treating the question as if I were answering a question on a law school exam. As an advocate, I am entirely indifferent as to whether this court dismisses the appeal for lack of subject matter jurisdiction or affirms on one of the multitudinous grounds. In terms of sort of federal court's issues, if the patent no longer exists, I'm not sure how there is subject matter jurisdiction, but I acknowledge Your Honor's point, and I think it would be perfectly appropriate for this court to address the issue on the merits and simply affirm. And if you are correct about the subject matter jurisdiction question, then we would never, once a panel has ruled there's no subject matter jurisdiction, according to you, this court would never, ever, ever have any vehicle or ability to reconsider that. To reconsider which question? Whether we were correct. To reconsider the underlying Fresenius question. You will have made the panel decision ultimate and binding and impenetrable, unreviewable. That can't be the case. But anyway, your point is well taken. I simply want to answer one question that Judge Moore had posed to Mr. Pitcock. The particular case that Mr. Pitcock had cited was not cited in his opening brief, and I do not believe it was cited to the district court. Is it Dura Last? Dura Last. And I would also direct the court to Appendix Sites 674 and 675, which was personal audio's opposition to the motion for entry of judgment and the determination that CBS is entitled to statutory costs. The entire substantive argument with respect to the opposition to the entry of judgment is one paragraph. Dura Last is not cited. Unless the court has further questions, I'm not prepared to waive the rest of my time. Okay. Thank you, Your Honor. Thank you, Your Honor. Mr. Pitcock, I'm going to restore your four minutes. Thank you, Your Honor. So in coming back to this point on whether you cite Dura Last or not, we always raise the argument, and in fact, I don't think there's any doubt that we raise this argument. There is a question of when is it appropriate to raise an argument on the Seventh Amendment on a jury verdict. Is it really during the appeal of the IPR, or do we even have standing to raise those issues? When we tried to raise those issues with the federal circuit on the IPR appeal, they were ignored. There was actually no ruling on any of the constitutional issues, and one could argue that they were— But your case was affirmed. The case was affirmed. So you made arguments claiming there was a Seventh Amendment violation, and the court affirmed the judgment below. What makes you think that that constitutes no ruling? I'm sorry, Your Honor. They didn't address the Seventh Amendment argument. There was nothing in the ruling that said, no, this is fine. There was nothing that addressed the Seventh Amendment at all, and there's some question in these dual proceedings. Could they have affirmed if they believe you were correct about the Seventh Amendment? I believe they could have if they thought that there wasn't standing to raise a Seventh Amendment issue on a jury verdict when that record wasn't in front of the court. I believe they could have. I think they could have said, yes, this IPR appeal is affirmed, but not address the Seventh Amendment issue. To be clear, the Seventh Amendment issue you argued in the appeal from the IPR was that you had a Seventh Amendment right to a jury trial that prohibited the PTO board from assessing validity. It was not this reexamination point that you're now making. Actually, I don't believe that's correct because we had the prior jury verdict. I believe that we tried to raise both, Your Honor. Obviously, oil states addressed the one but has not addressed the other when it comes to the reexamination clause. That's what I'm saying is this is not an issue that is clear that you can raise from the appeal of the IPR because nothing has happened yet. The court hadn't entered judgment against us. There had been no negative ruling against the jury verdict at that time, but we did believe we needed to take these issues up on appeal. That's what I'm trying to do here now. This argument on Dura last, yes, we did not make that specific case argument, but we did make the argument and always have that you can't use something that occurs after the fact to do away with the jury verdict. Whether it went to final judgment or one of the other issues that has been addressed, that's not what I'm arguing. I'm not arguing about the finality of judgments. Lots of times the judgments are kept from being made final anyway. The Seventh Amendment applies at the point where there's a jury verdict on the issue, and it can only be based on the things that have occurred prior to that verdict. You can't reach back in time or you can't wait months later and then attack it that way because there was nothing at the common law at the time of the Seventh Amendment that would allow a later administrative attack on a jury verdict. These arguments were raised even if that specific case site was not. Okay. We thank you for your argument. Thank you, Your Honor.